# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 05-04593-TLM |
| TROY PAUL STEPHENSON, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

Chapter 7 trustee Gary Rainsdon ("Trustee")[1] seeks to abandon a personal injury cause of action (the "Claim"). The Claim is property of the bankruptcy estate of Troy Stephenson ("Debtor").[2] The Claim results from a lawsuit filed pre-petition by Debtor against McCall Memorial Hospital and Curtis A. Meske, M.D. ("Defendants") in Idaho state court. In addition to asking for Court approval of his suggested abandonment, *see* Doc. No. 57 ("Motion to Abandon"), Trustee also seeks a Court order approving his proposed final report and accounting of the administration of this chapter 7 case, *see* Doc. No. 62 (the "Final Accounting").

---

[1] Mr. Rainsdon was appointed successor trustee on March 21, 2007, after the former trustee, Lois Murphy, was removed from the case. References to "Trustee" prior to this date refer to Ms. Murphy, and those thereafter refer to Mr. Rainsdon.

[2] *See* § 541(a)(1); *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)). All statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, unless otherwise indicated.

MEMORANDUM OF DECISION - 1

Defendants request permission to intervene in the bankruptcy case and to be heard on their objection to the proposed abandonment. *See* Doc. No. 66. Following oral argument on intervention, abandonment and Trustee's proposed administration of the case, the matter was taken under advisement.[3] This memorandum of decision constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052, 9014.

## BACKGROUND AND FACTS

The facts are not in dispute. Before filing his chapter 7 bankruptcy petition on October 11, 2005, Debtor filed suit on a Claim against Defendants in the District Court for the Fourth Judicial District of the State of Idaho.[4]

Debtor filed his schedules and statement of financial affairs ("SOFA") with his petition. He scheduled total assets of $1,675.00 and total liabilities of $43,323.00. The original schedules did not list the Claim as an asset, nor was the lawsuit disclosed in the SOFA. The case was therefore noticed to creditors as a "no asset" chapter 7, and creditors were advised that proofs of claim should not be

---

[3] Trustee appeared through his general and special counsel, and Defendants appeared through their counsel. While Debtor has an obvious interest in this matter, as will be discussed, and sufficient pecuniary interest for standing, *see*, *e.g.*, *Lopez v. Specialty Rests. Corp. (In re Lopez)*, 283 B.R. 22, 26 n.7 (9th Cir BAP 2002) (addressing debtor standing when a "surplus" estate is a reasonable possibility), Debtor did not appear through his bankruptcy counsel of record at hearing. Doc. No. 70 (minute entry).

[4] The "litigation involves Defendants' [alleged] provision of negligent medical services to Debtor, resulting in a paralyzing, cervical spine injury to Debtor." Doc. No. 39 (Trustee's application to employ special counsel).

MEMORANDUM OF DECISION - 2

filed. *See* Fed. R. Bankr. P. 2002(e). After the creditors' meeting and examination of the debtor occurred under § 341(a) and § 343, Trustee filed a "no asset" report. On January 9, 2006, the Court entered orders approving that report, discharging the Debtor, and closing the case.

In September 2006, Trustee moved under § 350(b) to reopen the bankruptcy case based on Debtor's failure to disclose the Claim. The motion to reopen was filed shortly after Defendants moved for summary judgment on Debtor's Claim in state court, arguing Debtor should be judicially estopped from pursuing the action because he failed to disclose it on his bankruptcy schedules and statements.[5] The motion for summary judgment was stayed.

The Court granted the request to reopen the case, caused a trustee to be reappointed, *see* Fed. R. Bankr. P. 5010, and Debtor thereafter amended his SOFA to disclose the suit on the Claim as "pending." Debtor also amended schedule B to include the Claim as a personal property asset with an "indeterminate" value. Debtor also amended his schedule C to assert the Claim as exempt under Idaho Code § 11-604. Trustee's objection to that exemption was sustained and the exemption was disallowed. *See* Doc. Nos. 26, 28.

In spring 2007, Defendants made repeated offers to Trustee to settle the

---

[5] "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *In re JZ, LLC*, 357 B.R. 816, 824, 06.4 I.B.C.R. 110, 113 (Bankr. D. Idaho 2006), *aff'd*, 371 B.R. 412 (9th Cir. BAP 2007) (addressing judicial estoppel in the bankruptcy context).

MEMORANDUM OF DECISION - 3

Claim for the amount of the secured and unsecured debts as scheduled in the bankruptcy, which totaled about $43,000.00.[6]  Trustee never accepted the Defendants' settlement offers.

On July 12, 2007, Trustee notified the Court that this was an "asset case," causing the Court to issue a notice captioned "Notice of Need to File Proof of Claim Due to Possible Recovery of Assets."  *See* Doc. Nos. 37, 38 ("Notice of Possible Recovery").[7]  The notice states that "payment of a dividend to creditors appears possible" and advises creditors wishing to share in any distribution to file a proof of claim within ninety (90) days from the date of the notice.  It was served electronically on July 12, 2007, and by first class mail on July 14, 2007.

The proofs of claim filed in the reopened case total $4,555.75.[8]  Defendants are not scheduled creditors in the bankruptcy case and did not file proofs of claim.

While Trustee had earlier obtained Court approval of general counsel to advise him, in November, 2007, he applied for approval of the employment of "special counsel" to assist him in pursuing the Claim.  Doc. No. 39.  That

---

[6] Defendants acknowledge that any settlement would require the Court's approval following notice to all creditors and hearing.  *See* Fed. R. Bankr. P. 2002(a)(3), 9019(a); *In re Olson*, 06.3 I.B.C.R. 63, 64, 2006 WL 2433448 (Bankr. D. Idaho 2006); *In re Espinoza*, 03.3 I.B.C.R. 185, 189 (Bankr. D. Idaho 2003).

[7] *See* Fed. R. Bankr. P. 3002(c)(5).

[8] Following objections and rulings, the allowed unsecured claims total $2,580.13, according to Trustee's Final Accounting.  *See* Doc. No. 62 at 20-21.

MEMORANDUM OF DECISION - 4

application was granted, following hearing, in January, 2008. Doc. No. 47.

On October 23, 2008, Trustee moved to abandon to the Debtor the bankruptcy estate's interest in the Claim.[9] The Motion to Abandon asserts that Debtor "subsequent to the filing of the bankruptcy petition in this matter, has accumulated sufficient monies to fund payment of [the] bankruptcy estate['s] expenses, fees and claims in full [and] has funded to the bankruptcy Trustee the sum of $10,000.00 to date." Doc. No. 57 at 2, ¶¶ 5-6.[10] Trustee describes the reasoning behind such contribution of additional funds as Debtor's belief that "the value of the [Claim] is greatly in excess of" the sum required to pay creditors in full. *Id.* at ¶ 4.

Trustee recognizes that § 726(a)(1)-(5), governing the order of distribution of an estate, requires payment of administrative expenses, then unsecured claims (both those timely filed and untimely filed, though in a specific order), then certain other claims, and finally interest on all those claims if there are sufficient funds to do so. In the event there are remaining funds after all such payments, the surplus

---

[9] Trustee explained at the hearing that while he typically proposes abandonment of unadministered property of the estate under § 554(c) in the final accounting, the Office of the U.S. Trustee requested that he file the Motion to Abandon specifically addressing abandonment of the Claim, and he complied with that instruction.

[10] Certain post-petition funds can be property of the estate. *See* § 541(a)(3)-(7). The assertion here is that the $10,000.00 is not such property of the estate, but instead is "new money" advanced by Debtor.

MEMORANDUM OF DECISION - 5

goes to the debtor.  *See* § 726(a)(6).[11]  The $10,000.00 from Debtor, according to Trustee's Motion to Abandon, would allow for full administration of the estate and leave a small surplus for return to Debtor.  Trustee asserts that he would thus not need to pursue the Claim, and therefore wants it abandoned.[12]

This nexus between projected full distribution and abandonment leads Trustee to request that the order granting the Motion to Abandon be entered simultaneously with an order approving the Final Accounting filed on October 24, 2008.  The Final Accounting proposes distributions that would fully satisfy all administrative expenses, and pay all unsecured claims in full plus interest, and leave a $287.56 surplus that would be returned to Debtor.  Doc. No. 62 at 20-22; *see also* Doc. No. 63 (Notice of Final Accounting).[13]  The Notice of Final Accounting was served on all creditors, and there were no objections.  That matter was thus never set for hearing.

In seeking permission to intervene and to be heard on their objection to the

---

[11]  *See also In re Nielsen*, 06.4 I.B.C.R. 104, 2006 WL 3392920 (Bankr. D. Idaho 2006) (addressing § 726(a) distributive priorities, and assertion of an untimely claim by a creditor following a Rule 3002(c)(5) notice).

[12]  The Motion to Abandon is contingent, according to Trustee, upon the filing of no additional proofs of claim.  Because even untimely claims may be paid if sufficient funds are available, *see* § 726(a)(2)(C), § 726(a)(3), such claims here would defeat the "full" payment of § 726(a)(1)-(5) creditors and require Trustee to continue pursuit of the Claim.

[13]  The Final Accounting asserts total gross receipts of $7,507.51.  Doc. No. 62 at 2, 7.  These result from a $7,500.00 receipt on February 5, 2008, described as "settlement from Stephenson."  *Id*. at 12, 15.  The rest is interest accrued on Trustee's account.  *Id*.  The factual assertion in the Motion to Abandon regarding Trustee's "receipt" of $10,000.00 is inconsistent with and unsubstantiated by the Final Accounting.

MEMORANDUM OF DECISION - 6

Motion to Abandon regarding the Claim, Defendants argue that they have an interest in whether the Trustee accepts their offer to settle the claim. They further argue that the Trustee has failed to satisfy the standards for abandonment under § 554(a) or § 554(b), and that the Notice of Possible Recovery was deficient in that it did not notify creditors of Defendants' settlement offer to pay the full amount of the scheduled debts.

**DISCUSSION AND DISPOSITION**

    **A.**    **Defendant's motion to intervene**

Defendants did not object to abandonment pursuant to Federal Rule of Bankruptcy Procedure 6007, which states that "[a] *party in interest* may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court." Fed. R. Bankr. P. 6007(a) (emphasis added).[14] Defendants instead seek to "intervene" in order to be heard on their objection to the Motion to Abandon. That request is made pursuant to Fed. R. Bankr. P. 2018(a), which governs permissive intervention and allows an "interested entity" to intervene, for

---

[14] Defendants would likely not qualify as a party in interest under this rule. The term "party in interest" is not defined by the Code, but this Court has held that such party must have a "pecuniary interest" in the outcome of the bankruptcy. *See In re Simplot*, No. 06-00002-TLM, 2007 WL 2479664 at *9 n.45 (Bankr. D. Idaho Aug. 28, 2007) (citing *In re Elias*, 05.2 I.B.C.R. 41, 42, 2005 WL 4705220 (Bankr. D. Idaho 2005), and *In re Stone*, 03.2 I.B.C.R. 134, 135 (Bankr. D. Idaho 2003)). In *Elias*, this Court held that a potential defendant in a lawsuit by the bankruptcy estate was not a "party in interest" with standing to object to a professional employment application filed under § 327. 2005 WL 4705220, at *5. *Elias* thus supports the conclusion that Defendants in this case are not "parties in interest" with standing to object to abandonment under Rule 6007(a).

MEMORANDUM OF DECISION - 7

cause shown, either generally or with regard to a specific issue.[15] The Rule's language (*i.e.*, "may permit") gives the Court discretion in deciding whether to grant leave to intervene. The movant bears the burden of setting forth sufficient grounds for intervention. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

"Cause" under Rule 2018(a) may be shown by establishing "an economic interest [in the pending matter] or the fact that no other entity exists to adequately protect the interested entity's position." *Hasso v. Mozsgai (In re La Sierra Fin. Serv., Inc.)*, 290 B.R. 718, 728 (9th Cir. BAP 2002) (citing 9 Collier on Bankruptcy ¶ 2018.04[3] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2002)). *See also In re Lynott*, 193 B.R. 882, 886-87 (Bankr. E.D. Wis. 1996) (stating that "the 'lack of adequate representation of interests' requirement may be shown by establishing an economic interest in the matter which is not otherwise protected") (citing *In re Torrez*, 132 B.R. 924, 936 (Bankr. E.D. Cal. 1991); *In re Public Serv. Co. of New Hampshire*, 88 B.R. 546, 551 (Bankr. D.N.H. 1988)).

However, an entity's interest in avoiding future litigation with the debtor and limiting its potential liability or defraying the costs of such litigation is

---

[15] Rule 2018(a) states:

*Permissive Intervention*: In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

MEMORANDUM OF DECISION - 8

"merely collateral or contingent and insufficient 'cause' for authorizing intervention." *In re Lynott*, 193 B.R. at 886. *See also Lopez*, 283 B.R. at 27 n.9 (expressing doubt as to whether defendant in debtor's civil complaint had sufficient standing to intervene and object to reopening debtor's bankruptcy case).[16]

Here, Defendants are prospective obligors on the Claim. They are not creditors of Debtor or the estate. Their only interest in Debtor's bankruptcy case is in determining if Trustee will accept their offer to settle and conclude the litigation on the Claim for $43,000.00.[17] Their interest is in deferring litigation cost in state court and capping their ultimate exposure on the Claim to $43,000.00.

It should be noted that neither Debtor's motivations in advancing $10,000.00, nor Defendants' motivations in proposing payment of $43,000.00, have much to do with either's interest in seeing Debtors' creditors paid. Debtor wishes to pursue the Claim, believing it has value far in excess of the "new money" he is willing to pay to preserve that ability to litigate. Defendants

---

[16] At least one bankruptcy court has permitted a defendant in a debtor's proposed civil complaint to intervene and object to abandonment. *See In re Wilson*, 94 B.R. 886 (Bankr. E.D. Va. 1989). The successful intervenor then argued that the suit was groundless or barred by the statute of limitations (something akin to Defendants' argument here of bar by judicial estoppel). The court in *Wilson* denied that intervenor's objection, correctly noting that it supported rather than impeached the idea that the suit was of inconsequential value and should therefore be abandoned. *Id.* at 889-90.

[17] Defendants' settlement offer is contingent on no abandonment occurring and the Claim litigation being fully resolved. Doc. No. 67 (affidavit) at Ex. A.

MEMORANDUM OF DECISION - 9

inherently value the cost of litigation and the risk therefrom as at least $43,000.00, and that number has reference not to prospective liability but only to the figure they thought would be required to fully pay Debtor's initially scheduled debts. It seems both parties feel there may be value to the Claim in excess of these amounts. The amount of Debtor's scheduled claims, or of the filed proofs of claim, are merely convenient measuring sticks in their exploration of ways to use the bankruptcy process to preserve or terminate the litigation.

Though Defendants' interest in precluding Debtor from pursuing the Claim and limiting their liability is not represented by any other entity in the bankruptcy case, the Court concludes their interest is collateral or contingent and provides insufficient cause for allowing intervention. Defendant's motion will be denied.

While the denial of intervention results in a situation where there are no outstanding objections to either the Motion to Abandon or the Final Accounting, the Court must still review those requests.[18] Upon such review, the Court discerns fundamental problems with Trustee's proposals.

### B.   Issues with Trustee's Motion to Abandon and Final Accounting

Trustee clarified at the hearing that his Motion to Abandon is not brought

---

[18] The absence of opposition to a request does not result in automatic approval; the Court must find that the request is properly advanced and well taken. *In re Cent. Idaho Forest Prods.*, 317 B.R. 150, 154-55, 04.4 I.B.C.R. 159, 160-61 (Bankr. D. Idaho. 2004); *In re Millspaugh*, 302 B.R. 90, 95, 04.1 I.B.C.R. 25, 26 (Bankr. D. Idaho 2003).

MEMORANDUM OF DECISION - 10

under § 554(a) or (b)[19] but under § 554(c).[20] Abandonment under this section is usually subsumed in the final accounting process.[21] However, as noted earlier, the usually automatic § 554(c) abandonment finds form in this case as a separate motion because Trustee acceded to a U.S. Trustee request that it be so advanced.

The Claim became property of the estate as of the petition date, even though it was not scheduled initially, and it remained property of the estate after the bankruptcy case was originally closed since it was neither abandoned nor administered. *See* § 541(a)(1) and § 554(d); *Lopez*, 283 B.R. at 28 (citing *Pace v. Battley (In re Pace)*, 146 B.R. 562, 564-66 (9th Cir. BAP 1992)); *cf. Killingsworth*, 04.3 I.B.C.R. at 89-91 (determining § 554(c) abandonment of scheduled tax refund was final and irreversible, even though value was claimed as "unknown").

---

[19] Sections 554(a) and (b) allow for abandonment of property that is "burdensome to the estate or that is of inconsequential value and benefit to the estate." Trustee does not contend that the Claim has no value. Indeed, the Claim has enough value to promote both Debtor's and Defendants' spirited efforts at funding the estate in such a way that they might control its ultimate disposition. Nor is there any "burden" imposed by the existence of the Claim. The existence of the Claim led to Trustee's request to reopen the case, and special counsel has been employed to pursue the Claim. Trustee has identified no impediment or burden in that regard. Trustee clearly seeks to administer (in some fashion) this asset. And while the case is several years old, nothing presented to the Court suggests that time alone establishes the burdensome nature of the Claim. In short, nothing in the record shows that the Claim is either burdensome or of inconsequential value and benefit to the estate as required for abandonment under § 554(a) and § 554(b).

[20] Section 554(c) states:

(c) Unless the court orders otherwise, any property scheduled under section 521 (1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

[21] In fact, it is sometimes for that reason characterized as a "technical abandonment" as differentiated from those under § 554(a) or (b). *Vasquez v. Adair (In re Adair)*, 253 B.R. 85, 88 (9th Cir. BAP 2000). *See also In re Killingsworth*, 04.3 I.B.C.R. 88, 89 (Bankr. D. Idaho 2004).

MEMORANDUM OF DECISION - 11

Now that the Claim has been scheduled, if it is *not* administered in this reopened case, it would be abandoned to the Debtor at the closing of the case by operation of § 554(c).  This requires evaluation of whether the Final Accounting is appropriate and subject to approval.

### 1. Adequacy of notice issues

Defendants makes a series of arguments related to whether adequate notice was given in this case by Trustee.[22]  The first argument, *sans* cited authority, is that Trustee did not notify the estate's creditors of Defendants' offer to settle the Claim by paying all scheduled debts.  They contend that if Trustee provided such notice, additional creditors might well have filed proofs of claims and, possibly, be in line to receive distributions.[23]  Nothing in the Code or Rules requires Trustee here to issue a notice to creditors of the sort Defendants suggest.[24]

Defendants' second, and related, argument is that the Notice of Possible Recovery issued by the Court is incomplete and inadequate, in that it does not describe the assets Trustee believed were available for administration nor disclose Defendants' settlement proposal.  This argument is similarly unpersuasive.

---

[22] Despite the fact Defendants' motion for leave to intervene will be denied, the Court will address several of Defendants' arguments in the process of fulfilling its own obligation to determine the requested relief is proper.

[23] Trustee alleged at hearing that, in December 2007, he sent a letter to creditors who had not filed claims requesting that they do so.  The letter was not part of the record.

[24] Whether Trustee would have been required to disclose the offer in other contexts, such as a proposed settlement or sale of the Claim, is not before the Court.

MEMORANDUM OF DECISION - 12

Rule 3002(c)(5) governs notice where creditors are initially advised not to file proofs of claim but assets are later discovered. It states:

> If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

This Rule permits creditors, who refrained from filing claims after receiving notification that no dividends were anticipated, "to be given an opportunity to file when subsequent developments indicate the possibility of a dividend." *See* Rule 3002(c)(5) at Advisory Committee Notes.

Here, the Notice of Possible Recovery was issued and served by the Court upon notification by the Trustee that payment of a divided appeared possible. The Notice of Possible Recovery is a standard form issued by the Court under these circumstances. It is modeled on Procedural Form B 204 with only minor modifications incorporating the language of Rule 3002(c)(5).[25] The Notice of Possible Recovery expressly states that a dividend appears possible and that the claim bar date is ninety (90) days from the mailing of the notice. Rule 3002(c)(5) and Form B 204 require nothing more. Neither requires an explanation of the magnitude of assets or the potential size of distribution. The creditors were given

---

[25] Rule 9009 recognizes that forms may be issued by the Director of the Administrative Office of the United States Courts beyond the Official Forms which are required to be used. Use of those "Procedural Forms" (like B 204) "though not strictly required, is highly encouraged." *In re Peterson*, 04.3 I.B.C.R. 117, 199 n.17 (Bankr. D. Idaho 2004).

MEMORANDUM OF DECISION - 13

the requisite notice of the opportunity to file proofs of claims and share in distributions.

Defendant's third notice argument, that the Notice of Final Accounting lacks adequate detail and disclosures, is also unavailing. The Notice of Final Accounting provides the information required by the Code and Rules. It necessarily invites additional inquiry if questions exist, and the Final Accounting itself, and all other portions of the record, are readily available electronically. Recall, too, that this notice was sent to all creditors – those filing proofs of claim and those who had not – and it drew no objection.

The Court is sensitive to the need for good and proper notice. *See*, *e.g.*, *Brawders v. County of Ventura (In re Brawders)*, 503 F.3d 856, 871 (9th Cir. 2007) (citing, *inter alia*, *Millspaugh*, 302 B.R. at 100 nn. 20-21)). But the notices here were sufficient. Given when and for what purposes they were issued, they were not required to disclose or explain Defendants' alternative settlement proposals that were never accepted by Trustee.

### 2.  Other issues

Despite surviving Defendants' noticing critiques, the Final Accounting cannot be approved.

There is a material and significant factual issue presented by Trustee's submissions. In the Motion to Abandon, Trustee avers that Debtor provided the

MEMORANDUM OF DECISION - 14

sum of $10,000.00, and the same figure was referenced by Trustee in oral argument. However, as noted above, the Final Accounting submitted by Trustee makes clear that $7,500.00 – not $10,000.00 – was provided. This evidently occurred in February 2008, some eight months prior to the Motion. Doc. No. 62 at 12 (cash receipts and disbursement record).

In the face of this material discrepancy, the Court cannot and will not approve the Final Accounting.

Moreover, the Final Accounting asserts the funds were received by Trustee as a "settlement from Stephenson." *Id.* There is no docket activity in this case in February, 2008, and certainly none addressing a "settlement" with Debtor. As all here have noted and agreed, settlements require Court approval on notice under the Rules and case law. *See supra* note 6.

The inconsistent assertions in the Final Accounting and the Motion to Abandon require further explanation of what really transpired. The Final Accounting implies the $7,500.00 was a "settlement." The Motion to Abandon indicates Debtor "accumulated" $10,000.00 after bankruptcy and "funded" it to Trustee. Doc. No. 57 at 2.[26] And, stripped of linguistic gloss, it looks as if the Claim, as property of the estate, is proposed to be conveyed to Debtor in return for

---

[26] The means of accumulation is not discussed. The only disclosure of record regarding Debtor's finances is in the initial 2005 schedules, indicating he was disabled and subsisted on a small monthly amount of "SSD" benefits. Doc. No. 1 at schedule I.

MEMORANDUM OF DECISION - 15

a payment which may amount to a "sale" of property of the estate.[27]  Obviously the Final Accounting cannot be approved in the absence of a corrected, and legally adequate, record reconciling the differences and explaining this sitatuion.

**CONCLUSION**

It is beyond the need of this Decision to comment further on any of these alternative readings.  Whether a sale or a settlement or some other type of voluntary "funding," the record does not enable the Court to bless Trustee's approach.

The short answer, then, is simply that the Final Accounting cannot be approved.  Consequently, there is no abandonment that will occur under § 554(c).  This means that the Motion to Abandon, filed to highlight the § 554(c) issue, is premature.  That Motion will be denied, and the Final Accounting will not be approved.[28]  The Court will enter an order accordingly.

//

//

---

[27]  The Court appreciates that instead of "buying" the Claim for cash in hand, Debtor here allegedly "gave" funds to Trustee in an amount believed to be adequate to fully fund administration of the estate, and that the Claim would be abandoned at closing as an unadministered asset.  Even if the chosen form has substance worthy of approbation, Trustee has yet to prove it so.

[28]  The case will remain open.  As the party charged with possession of property of the estate and administration of such property, the ball is in Trustee's court.  Among the several "alternatives" available is one not discussed in this Decision because it was not part of the Trustee's filed submissions.  Trustee has obtained the requisite approval of employment of special counsel.  Special counsel is, like Defendants' counsel, an experienced and highly skilled litigator, and he is fully capable of prosecuting or settling the Claim.

MEMORANDUM OF DECISION - 16

DATED: February 6, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 17